(64 N. W. Rep. 563.)

---

George C. Peckham *vs.* W. W. Van Bergen.

Opinion filed November 26, 1900.

**Mortgage—Cancellation—Undue Influence—Failure to Satisfy.**

Action to cancel notes and mortgage given by plaintiff to defendant. *Held*, on the evidence, that the notes were without consideration, and were procured by undue influence of defendant over plaintiff.

### Counting Upon the Statute—Demand For Satisfaction.

> The statutory penalty for failure to satisfy a mortgage of record can be recovered only after the holder of the mortgage has failed to comply with a request to satisfy the same, and only then by counting strictly upon the statute prescribing the penalty.

Appeal from District Court, Cass County; *Pollock, J.*

Action by George C. Peckham against W. W. Van Bergen. Judgment for plaintiff. Defendant appeals.

Modified.

*Newman, Spalding & Stambaugh,* for appellant.

*L. A. Rose,* for respondent.

BARTHOLOMEW, C. J. Action in equity to cancel two promissory notes, and a mortgage securing the same, given by the plaintiff to the defendant on November 12, 1894. There was a decree for plaintiff in the lower court, and defendant appeals, demanding a review of the entire case. The action is grounded upon fraud, duress, menace, and undue influence practiced upon plaintiff by defendant in securing the notes and mortgage. The questions of law involved are of the most elementary character, and counsel are in accord upon them. A decision of the case requires only the investigation of questions of fact. This same case was before us upon another occasion. See 8 N. D. 595, 80 N. W. Rep. 759. In that case the issues of fact had been submitted to a jury, and were all resolved in plaintiff's favor. Upon the second trial the chancellor found that the notes were procured by undue influence, and were without consideration. Under the statute, we are required to exercise our independent judgment upon the facts. Yet where the points are close, and the testimony conflicting or inconclusive, it is not possible, perhaps, for us to remain entirely uninfluenced by the proceedings already had. Any extended discussion of facts in an opinion is always unprofitable, and we must content ourselves with a statement of facts we consider proven, only recurring to the testimony where necessary.

The defendant was a general merchant in the village of Grandin, in Cass county. In the spring of 1890 he brought plaintiff from his home, in an Eastern state, and gave him employment as a clerk in said store at Grandin. As plaintiff was 26 years old when this case was tried, in February, 1900, he could not have been more than 17 years of age when he entered defendant's employ. He remained in such employ until November 12, 1894, prior to which time he had been advanced to head clerk, and had virtual management of the business whenever defendant was absent. During the first year of his employment he received $25 per month, and was furnished board and room. The second year he received $35 per month and the same furnishings. The third year and thereafter he received $800 per year and nothing furnished. In the early part of the third year plaintiff was married, and during that season he built a small house

in Grandin upon a lot that he had purchased. It was this house and lot upon which the mortgage was given. Plaintiff, with his wife, occupied these premises as a homestead from the time the house was finished until the mortgage was given. On and prior to November 12, 1894, the defendant entertained an honest belief that plaintiff had been appropriating to himself sums of money that belonged to the defendant. His bookkeeper had informed him that the cash register would not balance, and some of the clerks claimed to have seen plaintiff ring up the wrong amount on the cash register upon a few occasions. We remark, in passing, that, in our judgment, the evidence fails to establish any specific theft or embezzlement. But the defendant, acting upon his belief in the unfaithfulness of plaintiff, proceeded with the aid of his bookkeeper, one Landt, to investigate plaintiff's affairs. The amount of money that plaintiff had received from defendant was easily ascertainable from defendant's books, as well as the amount of his purchases from the business. They then, as they claim, made an estimate, from such information as they could obtain, of all of plaintiff's expenditures elsewhere. Thereafter, and on the evening of November 12, 1894, at about 9 o'clock, defendant asked plaintiff to go with him into a banking building that stood across the street from the store, and to which building the defendant had keys. The defendant unlocked and opened the front door, and then unlocked another door that led them into the banking room proper. The building was dark, and defendant lighted a lamp. In the rear of the banking room was a room used as a bedroom, in which the bookkeeper, Landt, and one Anthony Van Bergen, a brother of the defendant, had, by previous arrangement, secreted themselves, leaving the door slightly ajar. Immediately after the light was produced, defendant, in broad terms, accused plaintiff of taking money that belonged to defendant. Plaintiff denied the charge, but defendant repeated it in positive terms. Plaintiff repeatedly and vehemently denied it, and begged defendant to cease accusing him of stealing. Defendant told him that his denial was useless; that he (defendant) had procured an expert bookkeeper to look up the account; and that he had positive evidence, and had the proofs in his hands, that plaintiff had stolen a large amount, and the sooner he (plaintiff) admitted it the better it would be for him. Defendant at the time had some papers in his hands, which he referred to, without exhibiting, as containing the proofs of his statement. These papers consisted of the accounts and estimates that had been made by himself and the bookkeeper, Landt, and showed that plaintiff's expenditures had exceeded his salary by $923. After repeated charges of theft, and assertion by defendant of positive knowledge of such theft, plaintiff broke down, and admitted, first a small sum, and subsequently larger sums, and, finally, that the amount was $500 or more. As the result of the interview, lasting an hour and a half or more, plaintiff agreed to give the two notes in controversy, aggregating $900, and a mortgage on his

homestead to secure the same. The defendant then called Landt from the back room, and instructed him to draw up the notes and mortgage. This was done, plaintiff signed the same, and the wife's signature to the mortgage was obtained, and the papers delivered. The testimony upon the facts stated is not without conflict, but we state them as in our judgment the proof leaves them. There was also much further testimony bearing upon the question of duress and menace. This we omit entirely, as those conditions were not proven. One or two undisputed matters should be mentioned as bearing upon the question of undue influence. Plaintiff's wife was upon that evening at home alone, momentarily expecting the return of her husband, and she was in a peculiarly delicate condition. Defendant during the interview represented that if plaintiff confessed and arranged the matter it need not be, and would not be, known to outside parties, and referred to the effect it must have upon a young man to have such things known, and also referred to the effect it would have upon the plaintiff's wife and aged parents.

The burden rests upon plaintiff to establish the invalidity of these notes. Whether or not they were supported by any consideration depends upon whether or not plaintiff had in fact fraudulently appropriated any of the defendant's money. If he had, and the amount was uncertain, and the parties agreed upon the amount stated in the notes, then the notes must be sustained, even if it be shown now that the actual appropriation was much less. Plaintiff can only succeed by showing that there was no fraudulent appropriation. He is confronted with the notes, which import a consideration, and by the admission that he undoubtedly made. He testifies in the most positive terms that he never frudulently appropriated to himself any money belonging to defendant. As we have said, there is not sufficient proof of specific acts showing that he did. He also testifies minutely to all the money he received during his employment by the defendant. It seems he received some $350 from the East aside from his salary. This sum was not taken into account in the statement prepared by the bookkeeper. But, had it been, there still would have remained nearly $600 of expenditures beyond legitimate receipts. Plaintiff also, in a general manner, testified to his expenditures, and from his testimony it appears quite clearly that the money he received from legitimate sources was ample to meet all his expenditures. The defendant made no direct attack upon this testimony. He did not seek to establish any expenditures beyond conceded receipts. When upon the witness stand defendant held in his hand the statement which in his interview with plaintiff he declared showed plaintiff's guilt conclusively, yet he made no effort to establish any item upon that statement. This is the more remarkable because plaintiff in his testimony had fixed the limit of his receipts, and, had defendant then shown any expenditure beyond such receipts, he would have entirely destroyed the force of plaintiff's claim that he had not appropriated money. That defendant made no

effort to do so is strongly corroborative of plaintiff's testimony, and, in the absence of plaintiff's admissions, we would not hesitate to hold the notes without consideration. The admissions upon this printed record give no trouble. This matter has been passed upon by those who were in better position to ascertain the truth than we are, and there is so much inherent force in the claim that these admissions were extorted by undue influence that we deem it our duty to so hold. It may be that the majority of men would not have made untruthful admissions incriminating themselves under the same circumstances. But when we remember that for $4\frac{1}{2}$ years, and at a time in life when highly impressionable, plaintiff had been away from home influence and in the employ of defendant; that he had, as the evidence shows, great confidence in, and respect for, defendant; that he practically followed his suggestions and advice in all matters; that the defendant was the one man who would have the greatest influence over him,—we are not surprised that this young man, not yet at the full strength of his mentality, should be found wanting in that stamina required to persist in the denial of a statement made by the defendant in positive terms, and, as he declared, of his own knowledge, and from proofs that he had in his possession that were conclusive. And when we add to this the fact that, considering their respective positions in the community where they resided, the young man must have known that any charge against him of theft made by his employer, whether true or false, would ruin and blast his reputation, and when we add, further, that the defendant pointed out the method by which any such open charge could be avoided, and the plaintiff's wife and aged parents spared the pain of a public disgrace, we think the facts show a case of undue influence and moral coercion which induced plaintiff to make admissions that were untrue in fact. His actions, as soon as he was removed from that influence, all point to his innocence. It a few days after the papers were executed, as soon as he could reasonably be able to get all the facts before an attorney, this action was begun. It will not answer this to say that the young man was so situated that he was forced to protect his reputation by bringing the action. If the course suggested by defendant was being followed, and there is nothing to the contrary in the testimony, knowledge of the matter was confined to those who were actors therein. Plaintiff's reputation with the public was not in danger. On the other hand, defendant had declared plaintiff guilty to his own personal knowledge, and that he held conclusive proof thereof. If plaintiff was in fact guilty, he would know that to bring this action would inevitably result in bringing upon himself all the disgrace that can follow theft and criminality. It is difficult to conceive that he would bring this action in the face of defendant's declarations, did he not know that such declarations were and must be unfounded in fact. From these our views it follows that the notes were without consideration, and the court was right in canceling them.

The trial court, however, rendered judgment against defendant for the sum of $100, the forfeiture specified in section 4724, Rev. Codes, for failure to satisfy of record, on request, a mortgage that has been satisfied in fact. In this the court was wrong. It does not appear that defendant was ever requested to satisfy said mortgage. The forfeiture can be recovered only by counting expressly upon the statute prescribing the forfeiture. *Greenberg* v. *Bank*, 5 N. D. 483, 67 N. W. Rep. 597. The District Court will enter a decree canceling the notes and mortgage as prayed in the complaint, with costs of that court. Neither party will recover costs in this court. Modified and affirmed. All concur.